## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| Drake Plastics Ltd. Co.; Drake Insurance Co.; and Strategic Risk Alternatives, LLC d/b/a SRA 831(b) Admin,<br><br>*Plaintiffs,*<br><br>v.<br><br>Internal Revenue Service; the Hon. Michael Faulkender, Acting Commissioner of the Internal Revenue Service, in his official capacity; Department of the Treasury; and Scott Bessent, Secretary of the Treasury, in his official capacity,<br><br>*Defendants.* | Civil Action No. 4:25-cv-02570 |

## DECLARATION OF DUSTIN CARLSON

I, Dustin Carlson, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1.  The statements below are based on my personal knowledge. If called to testify to their accuracy, I could and would do so.

2.  I am the President of Strategic Risk Alternatives, LLC d/b/a SRA 831(b) Admin ("SRA"). I have been at SRA for approximately 14 years, with 10 of those years spent as Operations Director and nearly four of those years spent as President. In my role as SRA's President, I oversee the company's operations and business growth.

3.  As part of my professional responsibilities, I have familiarized myself with the classification scheme and associated data collection and reporting obligations that will be imposed on SRA in complying with the Final Rule issued by the Internal Revenue Service ("IRS") titled *Micro-Captive Listed Transactions and Micro-Captive Transactions of Interest*, 90 Fed. Reg. 3,534 (Jan. 14, 2025) (the "Final Rule"). In particular, I have

familiarized myself with the Final Rule's classification of many legitimate micro-captive insurance arrangements as either "listed transactions" or "transactions of interest" that must be reported to the IRS.

4.   SRA was founded in 2011. It is an Idaho limited liability company with its principal place of business in Meridian, Indiana. It creates and manages micro-captive insurance plans for closely held private businesses in a wide variety of industries.

5.   SRA is a material advisor under IRS regulations, and so must disclose to the IRS any reportable transaction that it has assisted clients with over the past six years. See 26 U.S.C. § 6111; 26 C.F.R. §§ 301.6111-3(a), 1.6011-10(h)(3), 1.6011-11(h)(3). SRA is also required to maintain a list of the clients for which SRA acted as a material advisor with respect to those transactions, see 26 U.S.C. § 6112(a), and disclose that list to the IRS upon request, 26 C.F.R. §§ 301.6112-1(e).

6.   SRA currently manages approximately 800 captive insurance companies with a Section 831(b) in place. The Final Rule is likely to affect nearly all of these clients by inflicting status as either a transaction of interest or listed transaction. All of the micro-captive insurance companies that SRA has managed since 2015 have incurred a loss ratio of less than 60%, and nearly all will constitute a reportable "transaction of interest" under the Final Rule.

7.   SRA also estimates that at least a dozen captives managed by SRA likely constitute a listed transaction under the Final Rule, with a reasonable expectation of dozens more qualifying each subsequent calendar year. SRA has grown significantly since 2017, and as its book of clients matures, more and more will be considered a listed transaction under the Final Rule.

8. Accordingly, every single captive insurance company managed by SRA triggers the Final Rule in one form or another, incurring compliance costs and obligations on both the captive insurance owners and manager, alike.

9. After publication of the Final Rule, six micro-captive insurance companies managed by SRA requested to close. In addition, a dozen more captive insurance companies elected to revoke their Section 831(b) election due to the Final Rule.

10. Now that the July 31, 2025 deadline for submitting disclosures under the Final Rule has passed, SRA can now estimate with confidence, based on numerous conversations with clients, that another 25 to 35 of its client captive insurance companies will shutter their operations before December 31, 2025 unless the Final Rule is preliminary enjoined.

11. The Final Rule will inflict serious and irreparable harm on SRA during the pendency of this lawsuit, absent a preliminary injunction.

12. As noted above, SRA has already lost clients as a direct result of the Final Rule. It anticipates losing 25 to 35 more clients this year absent preliminary injunctive relief as these companies conclude, now that the IRS considers most or all of their legitimate captive insurance transactions to be potentially or presumptively tax abusive, that the risks of having their captives audited and the Section 831 tax incentive disallowed is simply too high to maintain this form of insurance. SRA does not expect that most of these clients will ever return, even if the Final Rule is ultimately set aside at the end of this case, given the costs of incorporating a new captive insurance program, as well as the fact that these businesses will have established a new commercial insurance program to replace the captive structure. SRA expects to lose at least 10 to

20 more clients annually thereafter during this litigation if the Final Rule remains in effect. As with its other former clients, SRA anticipates that most of these clients will not return even if the Final Rule is set aside at the end of this litigation.

13. By contrast, if this Court enters preliminary injunctive relief, SRA expects that it will not lose any additional clients during the pendency of this litigation as a result of the Final Rule. That is because these companies otherwise satisfy Congress' criteria for taking advantage of the Section 831 tax benefit, and so would continue to use their captives the same way that they did before the IRS issued the Final Rule.

14. The Final Rule has already inflicted an estimated $36,000 in lost fees upon SRA, with another $115,000 in management fees to be lost by the end of the year. SRA anticipates losing over $150,000 in annual revenues in each succeeding year as more clients begin to fall into the listed transaction category. SRA anticipates that many of these clients will forgo their Section 831(b) election and close.

15. The Final Rule will also expose SRA to expensive IRS audits. Over the past 10 years, only four of SRA's clients have undergone audits. However, the Final Rule dramatically increases the odds of IRS scrutiny. That is because almost every micro-captive insurance transaction will be a reportable transaction under the Final Rule and will require filing a Form 8886 with the IRS, which will, in turn, flag the transaction as a potential or presumptive tax avoidance scheme and trigger scrutiny from the Office of Tax Shelter Analysis. SRA itself will incur thousands of dollars in individual costs in defending against these audits, which it will not be able to recover in the event the Final Rule is set aside and the transactions that initially triggered the agency's scrutiny are no longer considered "transactions of interest" or "listed transactions."

16. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14th, 2025

_____
DUSTIN CARLSON
*President*
Strategic Risk Alternatives, LLC
d/b/a SRA 831(b) Admin